```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

JEANNIE G. SCOTT                                              PLAINTIFF

        v.            Civil No. 06-5030

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff Jeannie G. Scott brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits under the provisions of Title II of the Social Security Act (the Act). Both parties have filed appeal briefs and the matter is now ripe for review. The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

**BACKGROUND**

1. Plaintiff protectively filed an application for DIB on September 20, 2001, alleging that she became disabled on May 1, 2001, due to fibromyalgia, arthritis, chronic pain, and swelling of her hands and knees. (Tr. 80-82, 92.)

2. In a written decision dated October 19, 2005,[2] the ALJ

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The ALJ issued a previous written decision finding plaintiff not disabled (Tr. 14-22), but that decision was reversed and remanded by the District Court for further proceedings (Tr. 363-67.)

found that plaintiff had the following severe impairments: fibromyalgia, osteoarthritis, avascular necrosis of the left knee, hypertension, and "heart condition status postoperative for ... coronary angioplasty." (Tr. 337.) The ALJ concluded, however, that plaintiff was not disabled, as she retained the residual functional capacity to perform her past relevant sedentary work as an inventory specialist or general clerk. (Tr. 342-43) Plaintiff seeks judicial review of this decision.

**APPLICABLE LAW**

3. Our review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir. 1993). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence that supports the Commissioner's decision, along with evidence that detracts from it. *Siemers,* 47 F.3d at 301; *Barrett v. Shalala*, 38 F.3d 1019, 1022 (8th Cir. 1994).

4. To be eligible for DIB benefits, a claimant has the

burden of establishing the existence of a disability under the Act. 42 U.S.C. § 423(a)(1)(D). To meet this burden, the claimant must show:

* that she has a medically determinable physical or mental impairment that has lasted, or can be expected to last, for at least one year;

* that she is unable to engage in any substantial gainful activity; and

* that this inability results from the impairment.

See *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

5. The Commissioner follows a familiar five-step process to determine whether a claimant is disabled:

(1) whether the claimant has engaged in substantial gainful activity since filing her claim;

(2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;

(3) whether the impairment meets or equals a presumptively disabling impairment listed in the regulations;

(4) whether the claimant has the residual functional capacity – that is, what she can do despite her limitations -- to perform her past relevant work; and

(5) if the claimant cannot perform her past work, the burden

then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and experience.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Pearsall*, 274 F.3d at 1217.

**DISCUSSION**

6.  The Court first addresses the ALJ's assessment of plaintiff's subjective complaints.  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ found that plaintiff's complaints of disabling pain were not credible.  In making this finding, the ALJ relied on a disability supplemental interview outline dated October 18, 2001, in which plaintiff indicated that she was able to care for her own personal needs, perform most household chores, shop, run errands, prepare some meals, etc.  (Tr. 109-110, 339.)  The ALJ concluded that plaintiff's ability to perform these activities were inconsistent with her subjective complaints.

The Court is troubled by the ALJ's reliance on a

-4-

supplemental interview outline that was dated four years prior to the issuance of the ALJ's decision. In a subsequent supplemental interview outline, dated December 11, 2004, plaintiff indicated that her activities were much more restricted. Specifically, plaintiff stated that she was not able to take care of her own personal hygiene needs, was not able to perform any household chores, was not able to shop, etc. (Tr. 422-23.) The ALJ did not address the restrictions plaintiff identified in her more recent supplemental interview outline.

The Court is also troubled by the ALJ's finding that plaintiff had "shown to experience no significant and substantiated side effects from her medications which negatively impact her ability to perform work-related activities." (Tr. 339.) The medical evidence indicates that plaintiff was on numerous medications, methadone and oxycodone for pain. Plaintiff testified that these medications caused her drowsiness, confusion, and difficulty concentrating. (Tr. 548.) Dr. Cygnet Schroeder, who conducted an independent medical examination of plaintiff in November 2004, noted that plaintiff "appear[ed] to be impaired [in] concentration and memory," possibly due to her "narcotic usage [or] chronic pain." (Tr. 448-49.) Plaintiff's treating physician, Dr. James Baker, noted that plaintiff was on "high doses of narcotic pain medication." (Tr. 462.)

Based on the foregoing, the Court concludes that the ALJ did not properly evaluate plaintiff's subjective complaints and that remand is therefore warranted.

7. Remand is warranted on other grounds as well. The medical evidence in this case indicates the following:

* In Dr. Schroeder's independent medical examination of plaintiff in November 2004, she summarized plaintiff's medical history as follows:

> Her past medical history is quite significant. She has had a known history of fibromyalgia for some 14 years.... In 2000, she suffered a myocardial infarction, two-stent placement. She developed left knee discomfort, eventually was found to have avascular necrosis ... [and] underwent an elective total knee arthroplasty in the hopes that this would improve her overall pain relative to her knee. Her surgery was not beneficial for this.

(Tr. 447.) Dr. Schroeder also noted that plaintiff appeared to be "profoundly depressed." (Tr. 448.) Dr. Schroeder opined:

> I am doubtful at this time that the claimant would be able to maintain any kind of employment. Cognition may limit her employment as far as being able to complete the tasks required. I feel that [her] functional limitations are based on her multiple medical co-morbidities, coronary artery disease, most likely chronic obstructive pulmonary disease, chronic fibromyalgia, chronic pain secondary to her avascular necrosis.

(Tr. 449.)

* Dr. Baker, plaintiff's treating physician, noted that plaintiff's pain syndrome was difficult to control and stated that

she had limitations in "most activities," including standing, walking, sitting, lifting, etc. (Tr. 457-61.) Dr. Baker also noted that plaintiff suffered from clinical depression, for which she required medication. (Tr. 462.) In May 2004, Dr. Baker opined that plaintiff "needs to be off work till further notice." (Tr. 459.)

  *   Dr. Mark Powell, plaintiff's orthopedic surgeon, never released plaintiff to return to work following her knee-replacement surgery. (Tr. 463-71.)

  8.  In concluding that plaintiff retained the residual functional capacity to perform her past work, the ALJ relied on an orthopedic consultative examination and a psychological consultative examination. In light of the medical evidence outlined above, these consultative examinations cannot be said to constitute substantial evidence supporting the ALJ's decision. See Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) (the opinion of a consulting physician who examines a claimant once does not generally constitute substantial evidence). The Court therefore believes that remand is necessary so that the record can be further developed regarding plaintiff's residual functional capacity.

**CONCLUSION**

  9.  Based on the foregoing, this case is hereby remanded to

the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ is directed:

* to re-evaluate plaintiff's subjective complaints in light of the evidence noted above regarding her restricted activities and the side-effects of her medication;

* to address interrogatories to plaintiff's treating physicians – including Dr. Baker, Dr. Powell, Dr. Wayne Brooks (a pain specialist who treated plaintiff), and Dr. Charles Inlow (plaintiff's cardiologist) – asking the physicians to review plaintiff's medical records, to complete a residual functional capacity assessment regarding plaintiff's capabilities during the time period in question, and to give the objective basis for their opinions;

* to have a rheumatologist evaluate plaintiff and complete a similar residual functional capacity assessment; and

* to have another psychological evaluation conducted and have the examiner complete a mental assessment of plaintiff's ability to perform work-related activities.

With the above evidence, the ALJ should then re-evaluate plaintiff's residual functional capacity and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the residual-functional-capacity assessments and supported by the evidence.

IT IS SO ORDERED this 27th day of March 2007.

                                        <u>/S/JIMM LARRY HENDREN</u>
                                        JIMM LARRY HENDREN
                                        UNITED STATES DISTRICT JUDGE